UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NICOLE M. BELCHER,

      Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant,
_____/

Case No. 1:16-cv-944

HON. ROBERT J. JONKER

## OPINION

This is a social security action brought under 42 U.S.C. § 405(g) seeking judicial review of a final decision by the Commissioner of the Social Security Administration (Commissioner) denying Plaintiff's claim for disability insurance benefits (DIB) and supplemental security income (SSI) under Titles II and XVI of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act.

## STANDARD OF REVIEW

The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v.*

*Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever evidence in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

**PROCEDURAL POSTURE**

Plaintiff was forty-six years of age on the date of the ALJ's decision. (PageID.123, 237, 249.) She completed high school and was previously employed as a production worker, sewing machine operator, automotive production assembler, and as a nurse's aide. (PageID.184–186, 363, 417.) Plaintiff previously applied for benefits on July 27, 2011. This application resulted in an unfavorable decision by an ALJ on January 7, 2013, but does not appear to have been further

pursued. (PageID.126.) Instead, Plaintiff again applied for benefits on April 8, 2013, alleging disability beginning July 7, 2010, due to depression, type II diabetes, anxiety, posttraumatic stress disorder, chronic back pain, fibromyalgia, and hypertension. (PageID.237, 249, 326–338.) Plaintiff's applications were denied on July 2, 2013, and Plaintiff subsequently requested a hearing before an ALJ. (PageID.264–271, 276–278.) On October 14, 2014, Plaintiff appeared with her counsel before ALJ Manh H. Nguyen for an administrative hearing at which time Plaintiff and a vocational expert (VE) both testified. (PageID.158–195.) On January 30, 2015, the ALJ issued an unfavorable written decision that concluded Plaintiff was not disabled. (PageID.123–139.) On June 2, 2016, the Appeals Council declined to review the ALJ's decision, making it the Commissioner's final decision in the matter. (PageID.70–75.) Thereafter, Plaintiff initiated this action under 42 U.S.C. § 405(g).

## ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a

---

[1]
1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §§ 404.1520(c), 416.920(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d), 416.920(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed. (20 C.F.R. §§ 404.1520(f), 416.920(f)).

dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining the claimant's residual functional capacity (RFC). *See* 20 C.F.R. §§ 404.1545, 416.945.

Plaintiff has the burden of proving the existence and severity of limitations caused by her impairments and that she is precluded from performing past relevant work through step four. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, it is the Commissioner's burden "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*

ALJ Nguyen determined Plaintiff's claim failed at step five. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged disability onset date. (PageID.129.) At step two, the ALJ found that Plaintiff suffered from the severe impairments of degenerative disc disease, lumbar spine; fibromyalgia; diabetes mellitus with neuropathy; bipolar disorder; posttraumatic stress disorder (PTSD); panic disorder; alcohol dependence, in remission; cannabis abuse, in remission; and insomnia. (PageID.129.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments found in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (PageID.129–131.) At step four, the ALJ determined Plaintiff retained the RFC based on all the impairments:

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can stand and walk only four hours in an eight-hour workday and can occasionally operate foot controls bilaterally. She can never climb ladders, ropes, or scaffolds, kneel or crawl. She can occasionally climb stairs and ramps, balance, stoop, or crouch.

4

> She can frequently reach, handle, finger, and feel bilaterally. For every 30 minutes of sitting, standing, or walking, she must be able to change position for five minutes before resuming the prior position. She will remain on task 90% of the workday. She cannot work around unprotected heights or uncovered, unguarded moving machinery. She is limited to simple instructions. She cannot work in environment with production paced work quotas. She can tolerate occasional, routine changes. She cannot work with the public and is limited to occasional work with coworkers and supervisors. She cannot work in groups of more than nine people.

(PageID.131.) Continuing with the fourth step, the ALJ determined that Plaintiff was unable to perform any of her past relevant work. (PageID.133.) At the fifth step, the ALJ questioned the VE to determine whether a significant number of jobs exist in the economy that Plaintiff could perform given her limitations. *See Richardson*, 735 F.2d at 964. The VE testified that Plaintiff could perform work in the following representative jobs: inspector (113,000 national positions), office helper (80,000 national positions), and garment sorter (112,000 national positions). (PageID.186–193.) Based on this record, the ALJ found that Plaintiff was capable of making a successful adjustment to work that exists in significant numbers in the national economy. (PageID.134.)

Accordingly, the ALJ concluded that Plaintiff was not disabled from July 7, 2010, the alleged disability onset date, through January 30, 2015, the date of decision. (PageID.135.)

## DISCUSSION

### 1. The ALJ's Step Two Evaluation.

On January 14, 2015, well after the administrative hearing but before the ALJ's decision two weeks later, Plaintiff suffered a slip and fall on some ice. She sought treatment at the Mercy Hospital Cadillac Emergency Room, complaining of an injury to her low back and left hip.

(PageID.658.) She stated she had chronic hip and low back pain, and that the pain was worse after the fall. Plaintiff underwent x-rays and the completed scans revealed compression fractures at the T12 and L1 vertebrae. (PageID.559.) In her first claim of error, Plaintiff argues the ALJ erred because he failed to list these fractures as additional severe impairments. (PageID.686-688.)

As noted above, the ALJ found at step 2 of the sequential analysis that Plaintiff had several severe impairments. (PageID.129.) To the extent that Plaintiff is arguing the ALJ's decision should be overturned because the ALJ failed to find additional severe impairments at step 2, her argument is patently meritless. The finding of a severe impairment is a threshold determination. One severe impairment suffices to advance the sequential analysis to the next step. Here, the ALJ found nine, thus moving the analysis to the next step. The failure to find additional severe impairments is therefore "legally irrelevant." *McGlothin v. Comm'r of Soc. Sec.*, 299 F. App'x 516, 522 (6th Cir. 2008); *see also Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008); *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir.1987).

Further, the record fails to document that Plaintiff had any additional functional restrictions stemming from these compression fractures. Moreover, the ALJ's failure to explicitly discuss these four pages[2] of records was not reversible error. A claimant's RFC represents the "most [a claimant] can still do despite [the claimant's] limitations." *Sullivan v. Comm'r of Soc. Sec.*, 595 F. App'x 502, 505 (6th Cir. 2014); *see also* SSR 96–8p, 1996 WL 374184 at *1 (S.S.A., July 2, 1996) (stating that a claimant's RFC represents her ability to perform "work-related physical and mental activities in a work setting on a regular and continuing basis," defined as "8 hours a day, for

---

[2] Only the records found in exhibit 15F were submitted to the ALJ. The records found at exhibit 16F were not. Plaintiff does not request a sentence six remand for further consideration of these records.

5 days a week, or an equivalent work schedule"). In formulating the RFC, "the ALJ need only articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record." *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, at 547–48 (6th Cir. 2002) (citations and quotation marks omitted). The ALJ is not required to discuss every piece of evidence, and his failure to do so does not indicate that the evidence was not considered. *See Daniels v. Comm'r of Soc. Sec.*, 152 F. App'x 485, 489 (6th Cir. 2005); *Simons v. Barnhart*, 114 F. App'x 727, 733 (6th Cir. 2004); accord *Van Der Maas v. Comm'r of Soc. Sec.*, 198 F. App'x 521, 526 (6th Cir. 2006).

Plaintiff only speculates that these records may explain her significant back pain; she provides no medical opinion stating as much. Nor does it appear that any additional limitations are called for from these records. The records submitted by Plaintiff contain no discussion of any functional limitation related to Plaintiff's compression fractures. To the contrary, the records note Plaintiff's strength and reflexes were equal and intact in her bilateral lower extremities. (PageID.659.) She also had a negative straight leg raise test and there was no vertebral tenderness. (PageID.659.) She was able to ambulate without difficulty. (PageID.659.) After receiving medication, Plaintiff's pain was nearly resolved. While the clinical impression was that Plaintiff did have a compression fracture, it was described as old and, most notably, mild. (PageID.659.) Accordingly, I find that Plaintiff's arguments here are meritless.

## 2. The ALJ's Evaluation of Plaintiff's Subjective Complaints.

At the administrative hearing, Plaintiff alleged that she was impaired to an extent far greater than as ultimately recognized by the ALJ. The ALJ summarized Plaintiff's allegations as follows:

> The claimant alleged disability due to depression, Type II diabetes, anxiety, PTSD, chronic back pain, fibromyalgia, and hypertension (B2E). She testified she does not like crowds, and she gets nervous and leaves if there are 10 people around. She stated she uses a cane for balance, and she stated she sometimes falls. She stated she can walk a few blocks and can stand up to five minutes.

(PageID.132.) The ALJ went on to find that Plaintiff's allegations concerning the intensity, persistence, and limiting effects of her symptoms were not entirely credible. (PageID.132.) In her second claim of error, Plaintiff contends the ALJ erred by failing to explicitly discuss all the factors contained in SSR 96-7p, the regulation concerning the evaluation of a claimant's subjective complaints. Plaintiff has not shown reversible error.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, may be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984); *see also Grecol v. Halter*, 46 F. App'x 773, 775 (6th Cir. 2002). As the relevant Social Security regulations make clear, however, a claimant's "statements about [her] pain or other symptoms will not alone establish that [she is] disabled." 20 C.F.R. §§ 404.1529(a), 416.929(a); *see also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)); *Hash v. Comm'r of Soc. Sec.*, 309 F. App'x 981, 989 (6th Cir. 2009). Instead, a claimant's assertions of disabling pain and other limitations are evaluated under the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted). This standard is often referred to as the *Duncan* standard. *See Workman v. Comm'r of Soc. Sec.*, 105 F. App'x 794, 801 (6th Cir. 2004).

Accordingly, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Id.* (citing *Walters*, 127 F.3d at 531). In making this finding, social security regulations note that the Commissioner will consider the following factors: (1) a claimant's daily activities, (2) the location, duration, frequency, and intensity of a claimant's pain or other symptoms, (3) precipitating and aggravating factors, (4) the type, dosage, effectiveness, and side effects of any medication a claimant takes or has taken to alleviate pain and other symptoms, (5) treatment, other than medication, a claimant receives or has received for relief of pain or other symptoms, (6) any measure a claimant uses or has used to relieve pain or other symptoms, such as lying on one's back, shifting positions, or sleeping on a board, and (7) any other factors concerning a claimant's functional limitations and restrictions due to pain or other symptoms. *See* 20 C.F.R. § 404.1529(c)(3); SSR 16-3p, 2016 WL 1119029, at *7 (S.S.A. Mar. 16, 2016); *see also* SSR 96-7p, 1996 WL 374186, at *3 (S.S.A. July 2, 1996).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Id.* (citing *Walters*, 127 F.3d at 531); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001) (quoting *Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972) ("[i]t [i]s for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony")). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 780 (6th Cir. 1987). In fact, as the Sixth Circuit has stated, "[w]e have held that an administrative law judge's credibility findings are virtually unchallengeable." *Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 511 (6th Cir. 2013) (citation omitted).

Plaintiff's entire argument regarding the ALJ's credibility evaluation is that the "seven requirements under Social Security Ruling SSR 96-7p were either inadequately analyzed or not analyzed at all." (PageID.688.) It is true that meaningful appellate review of an ALJ's credibility determination requires more than a blanket assertion by an ALJ that "the claimant is not believable." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 248 (6th Cir. 2007). Put differently, the ALJ's credibility evaluation "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.* But Plaintiff points to no authority requiring an ALJ to discuss each of the factors listed in the regulations to meet this specificity requirement. To the contrary, the regulations merely note that the ALJ will "consider" the factors. 20 C.F.R. §§ 404.1529(a), 416.929(a). The ALJ gave sufficient consideration here.

The ALJ gave a lengthy explanation of his factual finding regarding Plaintiff's credibility and explicitly noted his obligation to consider Plaintiff's allegations under SSR 96-7p. (PageID.132.) Among other things, the ALJ noted that Plaintiff's physical complaints were inconsistent with objective examinations that found Plaintiff had normal sensation, reflexes, and negative straight leg raise testing. (PageID.132.) While it is true that the October 2, 2014, treatment note referenced by the ALJ is a note that largely concerned Plaintiff's mental health complaints, the Court sees no reversible error here because, as noted above, treatment records dated in January 2015 also contain no physical limitations and normal objective testing results. The ALJ also referenced Plaintiff's noncompliance with prescribed treatment. This was an appropriate consideration. The Sixth Circuit recognizes that a claimant's failure to follow prescribed treatment is evidence supporting an ALJ's factual finding that the claimant's testimony was not fully credible. *See Sias v. Sec'y of Health & Human Servs.*, 861 F.2d 475, 480 (6th Cir.1988). Here Plaintiff failed to attend therapy sessions (both physical and mental) and further failed to take her medication as prescribed.

In sum, the ALJ provided several reasons for finding Plaintiff's allegations were less than fully credible. These reasons were specific enough to permit the Court to undertake a meaningful review. Furthermore, the reasons articulated by the ALJ are supported by substantial evidence. Accordingly, this claim fails.

### 3. The ALJ's Evaluation of Plaintiff's Fibromyalgia.

Plaintiff next contends the ALJ failed to properly evaluate her fibromyalgia. Plaintiff correctly notes that SSR 12-2p is the applicable ruling. (PageID.691.) Beyond that, however, Plaintiff provides only brief and conclusory remarks that the ALJ's decision fails to properly apply this ruling. Accordingly, Plaintiff fails to demonstrate she is entitled to relief on this claim of error.

Admitting that the ALJ properly found her fibromyalgia was a severe impairment, Plaintiff alleges that the ALJ failed to connect the dots between her pain from fibromyalgia and the RFC. But Plaintiff fails to explain how the ALJ's analysis failed to satisfy SSR 12-2p's procedural requirements. Again, there is a difference between what an ALJ must consider, and what he must discuss. The Sixth Circuit has recently examined a similar claim regarding SSR 12-2p, and the court's decision on the point is worth quoting in its entirety:

> On July 25, 2012, the SSA released SSR 12–2p ("the Ruling"), which "provides guidance on how we develop evidence to establish that a person has a medically determinable impairment of fibromyalgia, and how we evaluate fibromyalgia in disability claims . . . ." SSA 12–2p, 2012 WL 3104869, at *1 (July 25, 2012). To that end, SSR 12–2p describes criteria for establishing that a person has a medically determinable impairment ("MDI") of fibromyalgia, *id.* at *2–3, the sources of evidence the ALJ may look to, *id.* at *3–4, and how a claimant's subjective assertions of pain and functional limitations are evaluated, *id.* at *4. The Ruling also states that fibromyalgia should be analyzed under the traditional five-step evaluation process used for analyzing other claims for SSI. *Id.* at *5–6. Importantly, as Plaintiff concedes in her brief before this Court, SSR 12–2p "is merely a binding interpretation of that which was already lawfully in effect." In other words, SSR 12–2p merely provides guidance on how to apply pre-existing rules when faced with a claimant asserting disability based on fibromyalgia.
>
> Plaintiff argues that "the Commissioner failed to apply SSR 12–2p in denying the application for benefits." Below, the district court observed that "Plaintiff fails to explain how the ALJ's RFC assessment contravenes SSR 12–2p or how the Commissioner's final decision should have differed in light of SSR 12–2p." We find the same is true in this appeal. In addition to the above-quoted assertion that the ALJ "failed to apply SSR 12–2p," Plaintiff ambiguously asserts that the ALJ "failed to enter into any discussion of the factors required by law and the SSR." Yet, Plaintiff does not state which "factors" were not discussed.
>
> To the extent these vague arguments suggest that the ALJ failed to explicitly apply 12–2p's diagnostic criteria for determining whether a claimant has an MDI of fibromyalgia, such error—to the extent it

> exists—is harmless given that the ALJ concluded (1) that Plaintiff did have fibromyalgia, and (2) that her fibromyalgia constituted a "severe impairment" under the second step of the five-step analysis. To the extent Plaintiff argues that the ALJ failed to properly apply SSR 12–2p's guidelines for evaluating a claimant's personal statements about the severity of her own symptoms, that argument is also unavailing. Section IV of SSR 12–2p states that when evaluating a claimant's statements, ALJs must "follow the two-step process set forth in our regulations and in SSR 96–7p." SSR 12–2p, 2012 WL 3104869, at *5. In this case, the ALJ cited SSR 96–7p and explicitly applied the two-step process described therein. Finally, as discussed above, the ALJ applied the standard five-step process for evaluating all disability claims. In sum, although the ALJ did not explicitly cite SSR 12–2p, it nevertheless applied the Ruling's principles. That is all that is required under our precedents. *McClanahan* [*v. Comm'r of Soc. Sec.*, 474 F.3d 830, 834 (6th Cir. 2006)] ("Because the ALJ conducted the analysis required by the Ruling, his failure to mention it by name is not fatal to the decision.").

*Luukkonen v. Comm'r of Soc. Sec.*, 653 F. App'x 393, 398–400 (6th Cir. 2016) (internal footnotes and citations omitted). The above analysis is easily applied to the instant case. As in *Luukkonen*, Plaintiff provides only vague claims regarding SSR 12-2p. Furthermore, as the Sixth Circuit noted, the ruling only provides guidance on applying pre-existing rules. In other words, the ruling does not require an analysis separate from the traditional five-step sequential evaluation. Here, as in *Luukkonen*, the ALJ found Plaintiff's fibromyalgia constituted a severe impairment at step two. (PageID.129.) Proceeding with the analysis, the ALJ found that none of Plaintiff's impairments, either alone or in combination, met or equaled a listed impairment. (PageID.129.) Turning to the RFC discussion, the ALJ provided an extensive evaluation of Plaintiff's credibility and applied the two step process called for in SSR 96-7p and SSR 12-2p. (PageID.132.) This was all that the ruling required on this record, and therefore Plaintiff's claim that the ALJ failed to properly apply SSR 12-2p is without merit.

### 4. The ALJ's Evaluation of Lay Witness Opinions.

In support of her application for benefits, Plaintiff submitted a function report completed by her roommate, Lon Westfall. The ALJ considered the report, but stated it was not given weight as it was from a non-medical source, the statements were general in nature, and the statements did not discuss specific functional limitations. (PageID.133.) In her last claim of error, Plaintiff argues that the ALJ improperly discredited these statements. (PageID.692.)

Opinions expressed by non-treating sources such as a claimant's roommate are not entitled to any deference, and the ALJ is not required to articulate good reasons for discounting such. *See, e.g., Smith v. Comm'r of Soc. Sec.*, 481 F.3d 873, 876 (6th Cir. 2007). The ALJ is simply required to consider the opinions and accord such weight he finds appropriate. *See, e.g.*, *Engebrecht v. Comm'r of Soc. Sec.*, 572 F. App'x 392, 397–98 (6th Cir. 2014). Plaintiff asserts that the justifications for failing to assign weight to her roommate's opinions are broad considerations that, if accepted, would be sufficient to discount every function report received by the Commissioner, and fail to pass muster under SSR 06-03p. (PageID.693.) The Court disagrees.

"SSR 06–3p does not require that an ALJ discuss opinions supplied by 'other sources' or to explain the evidentiary weight assigned thereto." *Hickox v. Comm'r of Soc. Sec.*, No. 1:09–cv–343, 2010 WL 3385528, at *7 (W.D. Mich. Aug. 2, 2010), *report and recommendation adopted*, No. 1:09–CV–343, 2011 WL 6000829 (W.D. Mich. Nov. 30, 2011). This is because SSR 06–3p is phrased in permissive rather than mandatory terms:

> In considering evidence from "non-medical sources" who have not seen the individual in a professional capacity in connection with their impairments, such as spouses, parents, friends and neighbors, it would be appropriate to consider such factors as the nature and extent to the relationship, whether the evidence is consistent with the other

evidence, and any other factors that tends to support or refute the evidence.

2006 WL 2329939, at *6 (S.S.A. Aug. 9, 2006). SSR 06–3p also uses the permissive term "should" in connection with the ALJ's explanation of the "consideration" given to "other source" opinions:

> Since there is a requirement to consider all relevant evidence in an individual's case record, the case record should reflect the consideration of the opinions from medical sources who are not "acceptable medical sources" and from "non-medical sources" who have seen the claimant in their professional capacity. Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator should generally explain the weight given to the opinions from these "other sources," or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.

*Id.* at *6; *see Vanportfliet v. Comm'r of Soc. Sec.*, No. 1:10–cv–578, 2012 WL 1345315, at *15 (W.D. Mich. Mar. 26, 2012); *see also Bernard v. Comm'r of Soc. Sec.*, No. 11–12951, 2012 WL 3639054, at *12 (E.D. Mich. July 25, 2012). The Court finds no error in the ALJ's consideration of Plaintiff's roommate's statements. While the third-party report should not be expected to provide medical expertise, the ALJ did not err by noting the limited scope of the lay witness's knowledge.

## CONCLUSION

For the reasons articulated herein, the Court concludes that the ALJ's decision is supported by substantial evidence. Accordingly, the Commissioner's decision is **AFFIRMED**.

A separate judgment shall issue.

Dated: July 31, 2017         /s/ Robert J. Jonker
                             Robert J. Jonker
                             Chief United States District Judge